PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 19-1732, 20-2254, 20-2897

_____

WAYNE PRATER,
Appellant in 19-1732

v.

DEPARTMENT OF CORRECTIONS, PA D.O.C.; BARRY
SMITH, Superintendent at SCI Houtzdale; KENNETH
HOLLIBAUGH, Deputy Superintendent at SCI Houtzdale;
DAVID CLOSE, Deputy Superintendent at SCI Houtzdale;
REBECCA REIFER, Superintendent Assistant at SCI
Houtzdale; MICHELLE IVICIC, Corrections Classifications
& Program Manager (CCPM); JANET PEARSON,
Corrections Health Care Administrator (CHCA); DR.
MUHAMMAD NAJI, Medical Director at SCI Houtzdale;
JOSEPH H. DUPONT, Chief Hearing Examiner; JOSEPH J.
SILVA, Director Health Bureau Care Services; ADREN
SMITH, Director Health Care Services; FREDDY NUNEZ,
Hearing Examiner; DORINA VARNER, Chief Grievance
Officer; KERI MOORE, Grievance Officer; JOEL
BARROWS, Major at SCI Houtzdale; K. SHEA, Security
Captain at SCI Houtzdale; T. KNOWLES, Captain at SCI
Houtzdale; CO 1 MOONEY, Lieutenant (Lt.) SCI Houtzdale;

C.O. KELLY, Lieutenant (Lt.) at SCI Houtzdale; CHIEF JAMES, Lieutenant (Lt.) SCI Houtzdale; PEGGY BARNS, Physician Assistant (P/A) at SCI Houtzdale; ELIZABETH JURY, Nurse at SCI Houtzdale;

RICHARD or RICH, Male Nurse at SCI Houtzdale; DAREN GINTER, Unit Manager at SCI Houtzdale; WILLIAM NORVELL, Maintenance Supervisor at SCI Houtzdale; POBORSKI, Sergeant (Sgt.) at SCI Houtzdale; LARUE, Sergeant (Sgt.) at SCI Houtzdale; G. Cogan, Counselor at SCI Houtzdale; DUFORE, Correctional Officer (C/O) at SCI Houtzdale; FLORA, Correctional Officer (C/O) at SCI Houtzdale;

MR. MAINES, Correctional Officer (C/O) at SCI Houtzdale; LONG, Correctional Officer (C/O) at SCI Houtzdale

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-19-cv-00019)
Magistrate Judge:  Honorable Keith A. Pesto

———

AARON VAUGHN,
Appellant in No. 20-2254

v.

CORRECTION OFFICER IMOHOFF, (Pod Officer of F-B Pod from 11/10/16 - 3/15/17); SERGEANT TIKEY, (Sgt. of F-B Pod 6 to 2am shift); CORRECTION OFFICER GILL; CORRECTION OFFICER CARTER, (Pod Officer of F-B

2

Pod from 11/10/16 - 3/15/17); LIEUTENANT SCHAMP, (RHU Lt. 2-10pm shift); CORRECTION OFFICER STECKLY, (Pod Officer of F-B Pod 2-10pm shift); CORRECTION OFFICER TUSCANO, (Pod Officer of F-B Pod 2-10pm shift); JOHN DOE, (Co-worker with CO Gill on 11/10/16); CORRECTION OFFICER W. PEREZ-RAMOS

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-00546)
Magistrate Judge: Honorable Lisa P. Lenihan

———

ISAAC RAY VAUGHAN, JR.,
Appellant in No. 20-2897

v.

ALBION SCI; C.O. BOYD, Guard; C.O. WOODS; C.O. CAMRON; C.O. MCINTOSH; C.O. W. CHRISTOPHER; C.O. ARNOLD; MR. LANCE, Unit Man.;
MS. NORTIN, Counselor; MS. HERMAN; MS. SNOW, Psych;
MS. RICHARDS, Psych; SUPERINTENDENT MICHAEL CLARK;
C.O. MAKENEY; C.O. SEVERO

———

On Appeal from the United States District Court

3

for the Western District of Pennsylvania
(D.C. No. 1-18-cv-00116)
Magistrate Judge:  Honorable Richard A. Lanzillo

_____

Argued on April 20, 2023
Before:  HARDIMAN, PORTER and FISHER, *Circuit Judges*.

(Filed: August 2, 2023)

Wayne Prater
#KV-1019
Houtzdale SCI
P.O Box 1000
209 Institution Drive
Houtzdale, PA 16698
    *Pro Se, Case No. 19-1732*

Aaron Vaughn
#KW-3603
Huntingdon SCI
1100 Pike Street
Huntingdon, PA 16654
    *Pro Se, Case No. 20-2254*

Isaac Ray Vaughan, Jr.
#JF-0037
Albion SCI
10745 Route 18
Albion, PA 16475
    *Pro Se, Case No. 20-2897*

Michelle Henry, Attorney General
Sean A. Kirkpatrick   *ARGUED*
Office of Attorney General of Pennsylvania
Strawberry Square 15th Floor
Harrisburg, PA 17120
   *Counsel for Amicus Curiae Case No. 19-1732*

James S. Ballenger
Samuel Gerstemeier   *ARGUED*
Tristan Locke   *ARGUED*
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
   *Counsel for Amicus Curiae Appellant Case Nos. 19-1732, 20-2254 and 20-2897*

Michelle Henry, Attorney General
Howard G. Hopkirk
Michael J. Scarinci
Office of Attorney General of Pennsylvania
Strawberry Square 15th Floor
Harrisburg, PA 17120
Daniel B. Mullen   *ARGUED*
Office of Attorney General of Pennsylvania
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
   *Counsel for Appellees Case Nos. 20-2254 and 20-2897*

———

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Wayne Prater, Isaac Vaughan, Jr., and Aaron Vaughn each challenge an order entered by a magistrate judge in their 42 U.S.C. § 1983 cases. A magistrate judge involuntarily dismissed Prater's case without prejudice for failure to prosecute, while the magistrate judges in Isaac's and Aaron's cases entered summary judgment for all defendants.[1]

Primarily at issue on appeal is whether the magistrate judges acted within the scope of their statutorily granted jurisdiction under 28 U.S.C. § 636. Section 636 is both innovative and limited. It was intended to lighten the load carried by district court judges by granting some preliminary and final decision-making authority to magistrate judges. However, to protect the purpose of Article III and citizens' right to an independent, life-tenured decisionmaker, § 636 places precise limits on a magistrate judge's jurisdiction absent parties' consent. For example, a magistrate judge can oversee pretrial discovery even without the consent of the parties, but he cannot grant summary judgment or involuntarily dismiss a case. However, those limits dissolve if the parties voluntarily consent to a magistrate judge's final judgment jurisdiction under § 636(c)(1).

Thus, the magistrate judges' jurisdiction to enter final orders in each of these three cases turns on the parties' consent. We will dismiss Prater's appeal for lack of jurisdiction because all parties did not consent and, therefore, the magistrate judge

---

[1] Isaac and Aaron have almost identical last names, so we use their first names to avoid confusion.

6

lacked the power to involuntarily dismiss the case. When a magistrate judge lacks jurisdiction, so do we. By contrast, the magistrate judges were empowered to enter summary judgment in Isaac's and Aaron's cases because all parties either expressly or impliedly consented. Therefore, we have jurisdiction and will affirm summary judgment based on the plaintiffs' failure to exhaust administrative remedies.

## I.

### A. Factual and Procedural History

This consolidated case concerns three appeals from orders entered by magistrate judges in the Western District of Pennsylvania.

#### a. Wayne Prater

Wayne Prater, a prisoner at State Correctional Institution Houtzdale, tore his Achilles tendon in an accident in July 2016. In February 2019, he filed a complaint against the Pennsylvania Department of Corrections (DOC) and thirty-one prison officials. Along with his complaint, Prater filed a motion to proceed *in forma pauperis* and a consent to jurisdiction form, choosing to proceed before a magistrate judge under § 636(c)(1) for any and all further proceedings in lieu of proceeding before a district court judge. Prater alleged prison officials showed "deliberate indifference to a serious medical need" and "intentional[ly] inflict[ed]" "unnecessary and wanton pain" by delaying his Achilles surgery for months, threatening his life by administering allergenic medication, denying him adequate pain medication, and exposing him to

conditions that risked re-injury. JA Prater 27.[2] Prater sought compensatory and punitive relief for these alleged ongoing violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. In addition, Prater sought relief related to a misconduct violation he received for improperly contacting his children.

The Western District assigned the case to a magistrate judge. The magistrate judge denied Prater's IFP motion under the Prison Litigation Reform Act (PLRA), which does not permit inmates to proceed IFP if they have three strikes—i.e., three actions or appeals dismissed because they are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). According to the magistrate judge, Prater's previous lawsuits amounted to four strikes. And the magistrate judge concluded that Prater did not qualify for the three-strikes exception for prisoners who are "under imminent danger of serious physical injury." *Id.* Therefore, Prater could proceed with his claims only "upon payment of the full filing fee." JA Prater 5. The magistrate judge also stated that Prater's complaint impermissibly joined "unrelated claims and defendants" that did "not share common questions of law or fact" or "arise out of the same series of occurrences," so he ordered any subsequent complaint to comply with federal joinder rules. JA Prater 5; *see also* Fed. R. Civ. P. 20(a)(2). Prater did not file an amended complaint or pay the full filing fee, so on February 28, 2019, the magistrate judge dismissed Prater's case "without prejudice for failure to prosecute (failure to pay the filing fee)." JA Prater 6. Prater appealed.

---

[2] Separate appendices were filed in each appeal. We cite them as "JA [name] [page]."

### b. Isaac Vaughan, Jr.

Isaac Vaughan, Jr., a prisoner at SCI Albion, filed a complaint against the institution in April 2018, alleging that he was assaulted on two separate occasions by prison officials. Isaac followed up with an amended complaint, naming SCI Albion and fourteen individuals. He alleged officials subjected him to excessive force in violation of his Eighth Amendment right when he was pepper-sprayed, beaten, shackled, placed on suicide watch, restrained, drugged, and shocked while guards ripped off his clothes. In support of his complaint, Isaac stated that he had properly exhausted administrative remedies because he "talk[ed] to everyone [he] could" about the incidents and filed a formal grievance. JA Isaac 67. In his formal grievance, Isaac offered several reasons why it "took so long" for him to file one. JA Isaac 237. Even so, his grievance was rejected as untimely. He did not seek further administrative review.

Along with his complaint, Isaac filed an IFP motion and a "consent to jurisdiction" by a magistrate judge under § 636(c)(1) in lieu of proceeding before a district court judge. JA Isaac 42. The magistrate judge granted Isaac's IFP motion, permitting him to formally lodge his complaint in May 2018. Throughout the litigation, the Office of Attorney General—acting through several deputy AGs who successively staffed the case—appeared on behalf of all defendants and waived service of process. The initial deputy AG on the case also filed a form consenting to magistrate judge jurisdiction under § 636(c)(1) on behalf of SCI Albion—the only named defendant at the time. The defendants eventually deposed Isaac. During his deposition, Isaac admitted that the only defendants who used force against him during either of the incidents were Correctional Officers Christopher and Maskrey.

9

All defendants moved for summary judgment. They argued SCI Albion was immune from suit under the Eleventh Amendment, and, among other things, Isaac's claims against the fourteen officials were not properly exhausted under 42 U.S.C. § 1997e(a) of the PLRA. The magistrate judge agreed and entered summary judgment in favor of SCI Albion under the Eleventh Amendment; in favor of the superintendent for lack of personal involvement in the alleged violation; and in favor of all other defendants based on failure to exhaust. Isaac appealed.

### c. Aaron Vaughn

Aaron Vaughn, a prisoner at SCI Dallas, filed a complaint against SCI Greene, over thirty officers, and several groups of John/Jane Doe defendants in April 2017. He alleged a variety of violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. He filed several amended complaints. But over time, various claims and defendants fell out of the case. The main claim at issue on appeal is Aaron's excessive force claim that CO Gill and a John Doe co-worker (later identified as CO Johnston) beat him while transporting him from one housing unit to another. In support of his complaint, Aaron stated that he properly exhausted administrative remedies. Aaron filed a formal grievance about the incident. DOC initiated an investigation pursuant to policy and then denied the grievance. Aaron unsuccessfully appealed once but did not seek final administrative review. Aaron also detailed the alleged abuse in a "Request to Staff Member" form. JA Aaron 484.

Along with his complaint, Aaron filed an IFP motion. After his IFP motion was granted, Aaron filed a "consent to jurisdiction" by a magistrate judge under § 636(c)(1) in lieu of proceeding before a district court judge. JA Aaron 135.

Throughout the litigation, the Office of Attorney General—acting through several deputy AGs who successively staffed the case—appeared on behalf of all defendants and waived service of process. The initial deputy AG on the case filed a form consenting to magistrate judge jurisdiction under § 636(c)(1) on behalf of SCI Greene and Robert Gilmore—the only defendants Aaron ordered to be served at the time.

The defendants deposed Aaron and moved for summary judgment. The magistrate judge entered summary judgment for CO Gill and CO Johnston, concluding that Aaron failed to exhaust administrative remedies by not taking a final administrative appeal. The magistrate judge noted that DOC maintains two policies for reporting abuse: ADM 001 and ADM 804. However, she reasoned that only the latter—which sets forth the formal grievance procedures, including the final administrative appeal—satisfies the PLRA's exhaustion requirements. The magistrate judge also noted that Aaron failed to substitute and serve CO Johnston as the John Doe co-worker from his complaint. Nevertheless, she entered summary judgment in CO Johnston's favor because Aaron's excessive force claim against CO Johnston was "identical" to Aaron's claim against CO Gill and "ar[o]se from the same set of fact[s]." JA Aaron 44. Aaron appealed.

## B. The Appeals

On appeal, Prater, Isaac, and Aaron argue that the magistrate judges lacked jurisdiction to enter final judgment orders in their respective cases. Given the similar jurisdictional issues posed by each of their cases, we consolidated the three appeals and appointed *amicus curiae* on behalf of the three

11

prisoners.[3] Meanwhile, the Commonwealth participated in all of the cases but in different capacities. It provided its views by way of special appearance in Prater's case—essentially similar to the role of *amicus curiae*—and represented the defendants in Isaac's and Aaron's cases.

## II.

The magistrate judges' jurisdiction and our jurisdiction are the central issues on appeal. The district courts had jurisdiction under 28 U.S.C. §§ 1331 and 1343. If the magistrate judges had jurisdiction, it would have been pursuant to 28 U.S.C. § 636. Our jurisdiction is "contingent upon" the magistrate judges' jurisdiction and would flow from §§ 636(c)(3) and 1291. *Burton v. Schamp*, 25 F.4th 198, 205 n.9 (3d Cir. 2022). We review de novo whether a magistrate judge had jurisdiction to issue a final order. *Id.* And we review our own jurisdiction de novo. *Dewey v. Volkswagen A.G.*, 681 F.3d 170, 180 (3d Cir. 2012). We conclude that the magistrate judge in Prater's case lacked jurisdiction to involuntarily dismiss his case, but the magistrate judges in Isaac's and Aaron's cases properly exercised final judgment authority.

## A.

In 1968, Congress passed the Federal Magistrate Act, 28 U.S.C. § 631 et seq., which abolished the office of United States commissioner and established the office of magistrate. Pub. L. No. 90-578, 82 Stat. 1107. It "conferred upon

---

[3] The Court is grateful to the Appellate Litigation Clinic at the University of Virginia School of Law for its able representation of the plaintiffs, and in particular thanks J. Scott Ballenger, Samuel Gerstemeier, and Tristan Locke for their well-presented and helpful briefs and oral arguments.

magistrates all the powers that commissioners had enjoyed" to settle "minor federal legal disputes," plus additional duties as assigned by district courts. *Gomez v. United States*, 490 U.S. 858, 865–66 (1989). "The Act grew out of Congress' desire to give district judges additional assistance in dealing with a caseload that was increasing far more rapidly than the number of judgeships." *Thomas v. Arn*, 474 U.S. 140, 152 (1985) (internal quotation marks and citation omitted). Congress intended magistrate judges "to play an integral and important role in the federal judicial system." *See Peretz v. United States*, 501 U.S. 923, 928 (1991) (calling magistrate judges "nothing less than indispensable" given district courts' "bloated dockets" (quoting *Gov't of the V.I. v. Williams*, 892 F.2d 305, 308 (3d Cir. 1989))).[4]

Under the Act, district court judges may "delegate certain matters to magistrate judges." *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017). However, because magistrate judges derive their power from Article I of the Constitution (establishing the legislative branch), not Article III (establishing the judicial branch), the Act "limit[s] the circumstances" in which a magistrate judge exercises final adjudicatory authority. *See Burton*, 25 F.4th at 206; *see generally* U.S. Const. art. II, § 2 (permitting Congress to "vest the Appointment of such inferior Officers" in "the Courts of Law"); 28 U.S.C. § 631(a) (providing for appointment of magistrate judges by district court). The scope

---

[4] In 1990, Congress revised the statute and renamed "magistrates" as "magistrate judges." *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089.

of a magistrate judge's jurisdiction depends on two factors: the consent of the parties and the nature of the matter.

The Act permits a district court judge to "designate a magistrate judge to hear and determine any pretrial matter," without the parties' consent, save eight exceptions, including "a motion . . . for summary judgment, . . . and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). The Federal Rules implementing the Act call pretrial matters that may be referred to a magistrate judge without parties' consent "nondispositive." Fed. R. Civ. P. 72(a). If a party disagrees with the magistrate judge's decision on such matters, the party may timely object, after which the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A).

In matters a magistrate judge does not have the power to "determine" without the parties' consent—pretrial motions excepted under § 636(b)(1)(A), "applications for posttrial relief" in criminal cases, and "prisoner petitions challenging conditions of confinement"—a judge may "designate a magistrate judge to conduct hearings . . . and to submit to a judge of the court proposed findings of fact and recommendations" for disposition. 28 U.S.C. § 636(b)(1)(B). The Federal Rules call these matters "dispositive." Fed. R. Civ. P. 72(b). A party may file timely objections to the magistrate judge's findings or recommendations. The district court "shall" review de novo any timely objections and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[5] 28 U.S.C.

---

[5] A party's failure to timely object to a magistrate judge's recommendation may cause the party to lose the right

14

§ 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Whether or not objections are filed, the district court "must take some action for a report and recommendation to become a final order"; thus, the district court retains final adjudicatory authority. *EEOC*, 866 F.3d at 100.

In addition, the Act provides that "[u]pon the consent of the parties," a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." 28 U.S.C. § 636(c)(1); *see also* Fed. R. Civ. P. 73.

So absent party consent, a magistrate judge's jurisdiction extends only to nondispositive pretrial matters. Outside those nondispositive pretrial matters, the magistrate judge makes findings of fact and provides the district court with non-final recommendations. But when there is party consent, the magistrate judge's jurisdiction is coextensive with the district court's jurisdiction, extending to any or all proceedings, including entry of final judgment.

## B.

With that background in mind, we first address Prater's challenge to a magistrate judge's authority to deny IFP

---

to de novo review by the district court; instead, a district court need only provide "reasoned consideration" to the legal issues raised by the recommendation. *EEOC*, 866 F.3d at 99–100 (citation omitted). However, a failure to timely object does not forfeit the right to appellate review once the district court has entered a final decision on the recommendation. *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

motions.[6] Though the Commonwealth purports to concede the issue, the magistrate judge's jurisdiction is a predicate of our own, and subject-matter jurisdiction cannot be waived or forfeited for failure of the parties to object to it. *See Burton*, 25 F.4th at 207.

Based on the statute, Federal Rules, and caselaw, we conclude that magistrate judges maintain jurisdiction to decide IFP motions. Starting with the plain text, § 636(b)(1)(A) carves out only eight matters from a magistrate judge's pretrial jurisdiction. But the fact that IFP motions do not appear in this list of exceptions is not conclusive because most courts agree the list is illustrative, not exhaustive, of matters beyond the scope of a magistrate judge's pretrial jurisdiction. *E.g.*, *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 946 (D.C. Cir. 2017) (citing First and Sixth Circuit cases); *see also Gomez*, 490 U.S. at 874 (reasoning "jury selection," which is not a listed exception under § 636(b)(1)(A), "is more akin to those precisely defined, 'dispositive' matters").

Even so, other textual clues suggest IFP motions are nondispositive pretrial matters. Take § 636(b)(1)(B), which expressly permits magistrate judges to recommend the disposition of (rather than determine) "applications for posttrial relief" and "prisoner petitions challenging conditions of confinement." Congress clearly prohibited magistrate judges from determining only the merits of such petitions. By contrast, § 636(b)(1)(B) does *not* prevent magistrate judges

---

[6] The magistrate judge's denial of Prater's IFP motion included a mandate that Prater's subsequent complaints comply with federal joinder rules. We do not understand the parties to be challenging the magistrate judge's power to order compliance with federal joinder rules.

from ruling on the IFP motions that often accompany such petitions. Notably, the power to allow plaintiffs to proceed IFP dates back to at least 1892—well before the passage of the Federal Magistrates Act in 1968 and amendments thereto in the 1970s. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311 (3d Cir. 2001); *see also Gomez*, 490 U.S. at 865–71 (tracing statutory history of magistrate judge authority). So Congress passed § 636(b)(1)(A) and (B) against the longstanding backdrop of district courts deciding pretrial IFP motions in tandem with substantive prisoner petitions. Yet, the statute limits a magistrate judge only from deciding the latter.

The Federal Rules implementing § 636(b) bolster our conclusion. As noted, the Rules use a different organizing principle than the statute. Instead of listing specific exceptions to magistrate judge jurisdiction, the Rules carve out all "dispositive" matters. Fed. R. Civ. P. 72(b). And while the Rules' language is surely broader than the statute's text, we must construe the term "dispositive . . . in harmony with the classifications limned in [§] 636(b)(1)." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir. 1999) (citing principle of *in pari materia*). Thus, the "enumeration" of specific exceptions in § 636(b)(1)(A) "informs the classification of other motions as dispositive or nondispositive." *Id.* at 6.

IFP motions are "not of the same genre" as the exceptions to a magistrate judge's pretrial jurisdiction enumerated in the Act, which are generally outcome determinative. *See id.* Most of the enumerated exceptions—motions for judgment on the pleadings, summary judgment, or dismissal, for example—can formally decide the case. *See* 28 U.S.C. § 636(b)(1)(A). Two of the enumerated exceptions do not follow this general rule but, nevertheless, fall outside of magistrate judges' § 636(b)(1)(A) authority. First, motions for injunctive relief are not outcome determinative for entire

17

claims, but they are "dispositive" in that they conclusively resolve parties' rights and obligations for the period of the injunction. Second, motions to suppress evidence in criminal cases raise unique concerns because they may well determine the outcome of *criminal* matters. While the denial of an IFP motion may functionally end a case when a plaintiff also lacks the ability to pay, the denial is not outcome determinative in the same way as a disposition would be related to the illustrative list of dispositive motions in § 636(b)(1)(A). After a denial of an IFP motion, a plaintiff can proceed with his case, unimpeded as to the merits, after first paying the filing fee.

Though the parties cite other Circuits that have concluded otherwise, we do not find those cases persuasive. Taking each case in turn, *Donaldson v. Ducote* concerned the right to proceed IFP on appeal. 373 F.3d 622, 624 (5th Cir. 2004). Obviously, a decision regarding that right does not pertain to pretrial authority. Meanwhile, *Tripati v. Rison* held a magistrate judge's jurisdiction over IFP motions derived only from a referral and parties' consent under § 636(c) but did not substantively discuss § 636(b) or distinguish IFP motions from other matters a magistrate judge has the pretrial authority to decide. 847 F.2d 548, 548–49 (9th Cir. 1988). That leaves *Woods v. Dahlberg*, 894 F.2d 187 (6th Cir. 1990), and the decisions relying upon it without much comment: *Lister v. Department of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005), and *Hunter v. Roventini*, 617 F. App'x 225, 226 (4th Cir. 2015). These cases primarily reason that magistrate judges may not deny IFP motions because doing so "is the functional equivalent of an involuntary dismissal"—one of the express statutory carveouts in § 636(b)(1)(A). *Woods*, 894 F.2d at 187.

It is not clear that simply denying an IFP motion without prejudice is the "functional equivalent" of an involuntary dismissal under § 636(b)(1)(A). Rather, a court is merely

18

determining *how* a petitioner's case proceeds—with or without prepayment of a filing fee. *See Abdul-Akbar*, 239 F.3d at 312. And we have endorsed a broad view of magistrate judges' pretrial power to determine how cases proceed. *See, e.g.*, *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983) (denial of appointment of counsel); *United Steelworkers of Am. v. N.J. Zinc Co.*, 828 F.2d 1001, 1006–08 (3d Cir. 1987) (grant of motion to strike jury demand); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 n.4 (3d Cir. 1990) (denial of motion to reopen discovery period); *see also Sell v. United States*, 539 U.S. 166, 175 (2003) (involving involuntary medication order by magistrate judge pursuant to § 636(b)(1)(A)). Just as with other pretrial matters within § 636(b)(1)(A)'s scope, denying an IFP motion simply sets parameters under which a plaintiff may proceed. That contrasts with orders that end the case, which magistrate judges may not decide. *See, e.g.*, *Burton*, 25 F.4th at 203 (dismissal of complaint with prejudice at screening stage); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 438 (3d Cir. 2005) (equitable allocation of responsibility for pollution in a CERCLA case, which was "one of the ultimate issues to be tried").

The Commonwealth warns that finding magistrate judge jurisdiction over IFP motions would force an inmate to simultaneously file objections in district court and appeal to our Court given that denials of IFP motions are immediately appealable under *Roberts v. United States District Court*, 339 U.S. 844, 845 (1950). But the Commonwealth overlooks the distinction between § 636(b) finality and § 1291 finality. The fact that a litigant may appeal directly to our Court when a *district court* denies his IFP motion does not mean the litigant can appeal directly to our Court when a *magistrate judge* denies his IFP motion. *See Siers*, 700 F.2d at 115 & n.8. While it is true that a magistrate judge's decision is "final" in the

sense that it is "dispositive as to the discrete matter referred to him or her," § 636(b)(1)(A) outlines a specific procedure for review of that final decision that begins with the district court, not our Court. *See Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir.), as amended (Sept. 8, 1998).

We can be sure that a magistrate judge's decision under § 636(b) is not directly appealable to our Court under § 1291 because "when Congress has intended that certain decisions of a magistrate be directly appealable to a circuit court, it has expressly said so." *Siers*, 700 F.2d at 116. For example, § 636(c)—which, upon the parties' consent, grants a magistrate judge authority to decide any and all matters—provides for appeal of a magistrate judge's decision "in the same manner as an appeal from any other judgment of a district court." In other words, it permits an appeal "in the same manner as an appeal" pursuant to § 1291. Thus, § 636(c) finality equals § 1291 finality. No similar language appears in § 636(b) related to a magistrate judge's decision on nondispositive pretrial matters. Quite the opposite. Congress has made clear that "review of a magistrate's decision on a nondispositive pretrial matter"—such as an IFP motion—"must, initially, be had in the district court." *Siers*, 700 F.2d at 116. Unless an inmate follows § 636(b)'s specific review procedure, which starts with the district court, a magistrate judge's denial of an IFP motion is not "considered a 'final' decision of the district court for purposes of 28 U.S.C. § 1291" or *Roberts*. *Id.* at 115.

Putting it all together, because an IFP motion is a nondispositive pretrial matter, a magistrate judge's denial does not become final and appealable to our Court within the meaning of § 1291 until after being objected to by the dissatisfied party and reviewed by the district court. *See id.* at 116. Once the district court rules on the motion, the denial

becomes final under § 1291. *See, e.g.*, *Sinwell v. Shapp*, 536 F.2d 15, 16 (3d Cir. 1976); *see also Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995) (regardless of whether dismissal is with or without prejudice, "an *in forma pauperis* plaintiff must be afforded appellate review of a determination that he is required to pay all or a portion of the court costs and filing fees to file a claim"). Not until that point does an inmate have a final, appealable order eligible for our review. Should an inmate fail to obtain review of the denial of an IFP motion in the district court first, as contemplated by the procedures in the statute, he forfeits the right to challenge the IFP ruling in our Court. *See United States v. Polishan*, 336 F.3d 234, 239–40 (3d Cir. 2003).

Treating IFP motions as nondispositive honors the statutory grant of power to magistrate judges to resolve "any pretrial matter," protects an inmate's right of review by a district court judge, and mitigates premature appeals of non-final decisions. Applying those principles here, the magistrate judge's power to deny Prater's IFP motion derived from his pretrial authority pursuant to § 636(b)(1)(A) and was not contingent on the parties' consent. And according to the statute, the appropriate avenue for review of the magistrate judge's denial is first before the district court, not our Court. Thus, we have no authority to review the magistrate judge's denial of Prater's IFP motion until after Prater seeks review in the district court.

## C.

Prater, Isaac, and Aaron also challenge the magistrate judges' jurisdiction to enter final judgments in their respective cases. A magistrate judge dismissed Prater's case for "failure to prosecute (failure to pay the filing fee)." JA Prater 6. And the magistrate judges in Isaac's and Aaron's cases entered

summary judgment orders in favor of all defendants. A magistrate judge may "hear and determine any pretrial matter . . . *except* a motion for," among other things, "summary judgment . . . and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A) (emphasis added). Because the statute carves out of magistrate judge jurisdiction the final judgment orders at issue here, the magistrate judges could not rely on their pretrial authority to enter the orders. But "[u]pon the consent of the parties," a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." *Id.* § 636(c)(1). Thus, the magistrate judges' jurisdiction to enter final orders in each of these appeals turns on whether they acted "upon the consent of the parties."

Under § 636(c)(1), consent is required from named plaintiffs and from defendants who are "directly affected by an order or a judgment issued by that magistrate judge," including yet-to-be-served parties but excluding parties the plaintiff failed to timely serve. *Burton*, 25 F.4th at 209 & n.43. Consent can be express or implied. *See Roell v. Withrow*, 538 U.S. 580, 582 (2003).

The parties agree, as do we, that not all named defendants in Prater's case provided express or implied consent. Specifically, there is no evidence that the Commonwealth ever consented to magistrate judge jurisdiction. In fact, the Commonwealth concedes it was not even aware of Prater's suit prior to dismissal. Absent consent, "the magistrate judge, as an Article I judge, simply d[id] not have jurisdiction to decide the matter" and dismiss Prater's case for failure to prosecute. *See Burton*, 25 F.4th at 206. His authority was restricted by the limits of § 636(b) and permitted him only to submit a recommended disposition to the district court.

22

The same is not true in Isaac's and Aaron's cases. The parties agree that plaintiffs Isaac and Aaron expressly consented, as did the initially named and served defendants in each suit. However, they dispute whether later-added defendants, who did not file consent forms, consented.[7]

Though later-added defendants did not expressly consent, we can infer consent based on their "conduct during litigation." *Roell*, 538 U.S. at 582. In *Roell*, the plaintiff alleged that prison officials disregarded his medical needs in violation of the Eighth Amendment. *Id.* Once the plaintiff consented to a magistrate judge's jurisdiction, the district court referred the case, with the caveat that the referral "would be vacated if any of the defendants did not consent." *Id.* at 583. The clerk subsequently sent the referral order to the defendants and requested that they state through their answer or a separate pleading whether they consented. *Id.* Only one of the three defendants consented; the others, represented by different counsel, did not. *Id.* Yet the parties "proceeded in front of the Magistrate Judge, all the way to a jury verdict and judgment." *Id.* The Supreme Court held that implied consent suffices for final judgment jurisdiction under § 636(c)(1) and will be found where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 590. By their actions, the two defendants "suppl[ied] the consent necessary for the Magistrate Judge's 'civil jurisdiction.'" *Id.* at 591 (quoting 28 U.S.C. § 636(c)(2)).

---

[7] CO Johnston need not have consented either because he was not named, *Dewey*, 681 F.3d at 181, or because Aaron failed to timely serve him, *Burton*, 25 F.4th at 209 n.43.

All defendants in Isaac's and Aaron's cases cleared *Roell*'s implied consent bar. Counsel common to all defendants in each case filed a consent form on behalf of some or all of the initially named defendants. In doing so, counsel was "made aware of the need for consent and the right to refuse it." *Id.* at 590. And by signing the form, counsel "voluntarily consent[ed] to have a United States Magistrate Judge conduct any and all further proceedings in the case" pursuant to "the provisions of [§] 636(c)(1)," and forewent the "option" of having the case "assigned to a United States District Judge." JA Isaac 56; JA Aaron 151. And because in both cases, later-named or later-served defendants were represented by the *same* counsel—OAG—we can infer their voluntary consent to magistrate judge jurisdiction.

*Amicus* argues consent was not effective because later-added defendants—as opposed to their counsel—did not consent. The Commonwealth responds that the decision to proceed before a magistrate judge belongs exclusively to counsel and cites *Gonzalez v. United States*, 553 U.S. 242 (2008), for support. We agree with *Amicus* that the Commonwealth overreads *Gonzalez*, which merely permitted counsel to choose whether to proceed before a magistrate judge during *voir dire* under a different subsection of the Act, not § 636(c)(1).[8] *See Gonzalez*, 553 U.S. at 249–53. Consenting to a full trial before a magistrate judge is categorically different.

---

[8] The Supreme Court held that counsel's consent—as opposed to a defendant's—was sufficient to empower a magistrate judge to supervise *voir dire* pursuant to § 636(b)(3). *See Gonzalez*, 553 U.S. at 253. That subsection states, "A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

In any event, we need not wade into the constitutional thicket of what rights may or may not be waived by counsel alone. *Compare id.* at 248–52 (suggesting some "fundamental" rights may be waived only by the client), *with id.* at 255–58 (Scalia, J., concurring) (reasoning "all waivable rights (except, of course, the right to counsel) can be waived by counsel"). There is no indication that any defendant would not have consented.

This case fits comfortably within *Roell*'s rule, which permits us to infer a defendant's consent from counsel's conduct, so long as consent is knowing and voluntary. *See* 538 U.S. at 589–90; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015) ("a litigant's consent—whether express or implied—must still be knowing and voluntary"). There is no indication that defense counsel in either Isaac's or Aaron's case acted contrary to the wishes of their clients. Nor does *Amicus* show that, despite voluntarily appearing through counsel before the magistrate judges, one or all defendants involuntarily or unknowingly waived their right to litigate before an Article III judge. Absent such a showing, a straightforward application of *Roell* preserves a litigant's "personal right" to insist on a trial before an Article III judge. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986).

In cases like this, *Roell*'s rule makes practical sense. In his amended complaint, Isaac sued the prison and fourteen individual officials. Aaron sued the prison and over thirty individual officials, some named, some unnamed, and some improperly named. As the pro se cases proceeded through the pleading and discovery phases, numerous officials were added, dropped, re-added, re-dropped, and renamed. *Amicus*'s proposed rule—that to comply with *Roell* the Commonwealth's attorney needed to round up the new, added, renamed, or re-added defendants and obtain their consent with

25

each new iteration of the suit—is hardly a workable solution in cases where numerous member-defendants of an institutional group are being sued.

We are also unpersuaded by *Amicus*'s attempts to narrow *Roell* to avoid its import. First, *Amicus* draws unwarranted distinctions between consent based on defendants' knowledge and consent based on counsel's knowledge. *Roell* explicitly permits either. 538 U.S. at 590 ("litigant *or counsel* was made aware" (emphasis added)).

Second, *Amicus* claims *Roell*'s rule applies only when "the litigants [have] repeated verbal notice, throughout lengthy proceedings, that the magistrate judge [is] operating on the understanding that they consented." *Amicus* Br. 24. But *Roell* is not so fact bound. Though the Court supposed implied consent would be "the exception, not the rule," it nevertheless reasoned that so long as a party is "notified of the availability of a district judge, . . . a litigant's general appearance before the magistrate judge will usually indicate the necessary consent." *Roell*, 538 U.S. at 591 n.7. It may be true that a general appearance, on its own, is not particularly illuminating and equally suggests parties intend to proceed under § 636(b)(1) or (c)(1). However, once a litigant or counsel makes the informed choice to forgo a district judge, we may glean new meaning from a subsequent general appearance. The fact that a magistrate judge exercises recommendation (rather than final judgment) authority prior to the filing of a consent form is irrelevant.

Third, *Amicus* is wrong that *Burton* narrowed *Roell*'s reach. In *Burton*, we declined to find implied consent for three defendants who shared common counsel. 25 F.4th at 204, 210. From that, *Amicus* concludes that filing a consent form for one defendant cannot "automatically transfer[]" consent to "subsequent defendants represented by the same counsel."

26

*Amicus* Br. 27. But *Amicus* ducks a key distinction. Unlike here, none of the *Burton* defendants filed a consent form prior to final disposition. 25 F.4th at 210–11 & n.59. Absent a form, or any other evidence, we could not infer that defense counsel knew of the need for consent and the right to refuse it. *See id.* at 210. Even more, the practical implications of *Amicus*'s reading of *Burton* would create strange results: the happenstance of staffing decisions at a law firm or government office related to particularly complex cases could nullify consent. Contrary to *Amicus*'s argument, by finding implied consent here, we are not transforming § 636(c)(1) into an opt-out regime. We are simply applying *Roell*, which set the bar for opting in.

Finally, we reject *Amicus*'s claim that procedural defects nullified the later-added defendants' implied consent. *Amicus* emphasizes that the later-added defendants were not advised, in keeping with § 636(c)(2)'s requirements, that consent may be refused without consequences. But the statute only imposes that requirement when, after the parties have been notified by the clerk of court about the availability of a magistrate judge, the court advises them *again* of the magistrate judge's availability. *See* 28 U.S.C. § 636(c)(2) ("[t]hereafter"); Fed. R. Civ. P. 73(b) ("Reminding the Parties"). And in any event, *Roell* held there was implied consent where "§ 636(c)(2) was honored in the breach." 538 U.S. at 586. The touchstone of implied consent is not "adherence to the letter of § 636(c)(2)," but rather the voluntariness of the parties' consent based on their knowledge and conduct during litigation. *See id.* at 587.

Therefore, we conclude all required parties in Isaac's and Aaron's cases either expressly or impliedly consented to magistrate judge jurisdiction, permitting the magistrate judges to enter summary judgment orders. When counsel filed consent

forms early in each case related to initially named defendants, counsel became aware of the need for consent and the right to refuse it, and still voluntarily continued to appear on behalf of all defendants before the magistrate judges.

## III.

Because the magistrate judge lacked jurisdiction to involuntarily dismiss Prater's case, we must determine what that means for our jurisdiction on appeal.

It is settled law that "[i]f the requirements of [§] 636(c)(1) are not satisfied, the 'magistrate judge [is deprived] of jurisdiction over the case'" and may not enter final orders; concomitantly, "we are statutorily deprived of appellate jurisdiction over the magistrate judge's orders." *Burton*, 25 F.4th at 205 (citation omitted). Despite *Burton*'s clear language, *Amicus* contends that we have statutory appellate jurisdiction to vacate and remand jurisdictionally defective magistrate judge orders pursuant to § 636(c)(3), which permits "any case referred under paragraph [c](1)" to be "appeal[ed] directly to the appropriate United States court of appeals." Because § 636(c)(3) does not require a *valid* referral, the argument goes, an appellate court maintains jurisdiction to vacate and remand even improperly referred cases that lack consent.

We disagree. Consent, not referral, allows the magistrate judge "to direct the entry of a judgment of the district court." 28 U.S.C. § 636(c)(3). And this "entry of judgment" is what permits us to review a magistrate judge's decision "in the same manner as an appeal from any other judgment of a district court." *Id.* As *Gonzalez* put it, "jurisdiction turns on consent," 553 U.S. at 253, whereas the referral merely sends or directs the case to a magistrate judge for decision, *see Refer*, Webster's Third New International

28

Dictionary of the English Language Unabridged (1971) ("to send or direct for . . . decision"); *cf. Roell*, 538 U.S. at 586–87 (procedurally defective referral does not nullify jurisdiction where there is voluntary consent). Our hands are tied, then, because our "final order jurisdiction" over a magistrate judge's decision arises under § 636(c)(3) only "to the extent it is final under 28 U.S.C. § 1291." *See Dewey*, 681 F.3d at 180 (citation omitted); *compare with Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 204, 210 (3d Cir. 2021) (vacating and remanding *after* exercising § 1291 jurisdiction). Without § 636(c) consent jurisdiction, we are back where we started many paragraphs ago: either the magistrate judge's order must be reviewed by the district court or incorporated into a subsequent final order (for § 636(b)(1)(A) orders) or adopted by the district court (for § 636(b)(1)(B) orders) before we have the power to act on it in any way.

We need not choose between adopting *Amicus*'s novel theory of quasi-subject-matter jurisdiction to review jurisdictional issues under § 636(c) on the one hand, or facing a "jurisdictional blackhole" on the other. *Amicus* Br. 37. Upon entry of a jurisdictionally defective magistrate judge order, parties simply have nonbinding, non-final judgments in hand. As the Commonwealth points out, a litigant's personal rights are protected even when a magistrate judge enters an improper dismissal because the litigant retains the right to an Article III forum: review by the district court. *See United States v. Raddatz*, 447 U.S. 667, 683 (1980). While other remedies, such as a writ of mandamus or vacatur of the referral under § 636(c)(4) may be discretionary, district court review of a magistrate judge's recommendation is not. *See id.*; *see also EEOC*, 866 F.3d at 100. Nor does the passage of time threaten to foreclose Prater's right to district court review. The timing of Prater's objections may affect the rigor of review he receives

from the district court, but it does not shut the district court's doors. *See EEOC*, 866 F.3d at 99–100.

Statutory appellate jurisdiction aside, both parties argue that we may vacate and remand jurisdictionally defective magistrate judge orders pursuant to our supervisory authority. We will not shoehorn into our supervisory authority a power to vacate and remand absent jurisdiction. We have consistently described our supervisory authority as empowering the Court to "mandate procedures deemed desirable from the viewpoint of sound judicial practice." *United States v. Wecht*, 484 F.3d 194, 204 (3rd Cir. 2007) (citation and quotation marks omitted); *see also Arn*, 474 U.S. at 142. This process-related oversight power is an insufficient stand-in for statutory appellate jurisdiction. Further, invoking our supervisory authority to vacate and remand jurisdictionally defective magistrate judge orders would be invalid because we would be contravening the clear text of a statute, *see United States v. Payner*, 447 U.S. 727, 737 (1980), which grants us jurisdiction only over a judgment entered upon the consent of the parties.

Admittedly, there is not perfect consistency in our disposition of cases when we lack jurisdiction to review an order entered by a magistrate judge. *See, e.g.*, *Burton*, 25 F.4th at 212 (vacating and remanding); *Siers*, 700 F.2d at 116 (dismissing). Despite our inconsistent history and the parties' consensus that vacatur and remand is proper, we will dismiss Prater's appeal for lack of jurisdiction. Dismissal is more appropriate because when jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *see also, e.g.*, *Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006) (dismissing for lack of jurisdiction an appeal from a magistrate judge's discovery order that had not been reviewed by the district court); *Geaney v. Carlson*,

30

776 F.2d 140, 143 (7th Cir. 1985) (dismissing for lack of jurisdiction because "magistrate's dismissal is a nonappealable order"); *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 472 (6th Cir. 2006) (same). *But see Allen v. Meyer*, 755 F.3d 866, 869 (9th Cir. 2014) (vacating and remanding jurisdictionally defective magistrate judge order dismissing inmate's § 1983 case).

The somewhat antiquated cases the parties cite in support of a roving "supervisory appellate power," *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 676 (1944), to justify vacatur do not change our conclusion. *Walling* and its progeny have been narrowly interpreted to permit a court to "make such disposition of the whole case as justice may require" when "mootness prevents us from reviewing [a judgment] that has prospective effects." *See Camreta v. Greene*, 563 U.S. 692, 714 n.11 (2011) (citation omitted). No mootness issue exists here. And a court's power to issue a "corrective order" even when "the merits cannot be reviewed," *see Gully v. Interstate Nat. Gas Co.*, 292 U.S. 16, 18 (1934), has similarly been narrowly construed, *see, e.g.*, *Okla. Gas & Elec. Co. v. Okla. Packing Co.*, 292 U.S. 386, 392 (1934) (vacating and remanding because the correct appeals procedure was not "more definitely settled" and dismissal would cause appellants to "los[e] their opportunity" for merits review); *United States v. Corrick*, 298 U.S. 435, 436, 440 (1936) (vacating and remanding "merely for the purpose of correcting" an erroneously entered injunctive order against the Secretary of Agriculture and others that prevented them from prosecuting corporations who violated rate schedules); *Bailey v. Patterson*, 369 U.S. 31, 34 (1962) (vacating and remanding order from improperly convened three-judge district court). In fact, the cases cited by the parties adhere to the "general rule" of dismissing an appeal in the absence of jurisdiction so long as

31

our dismissal does not give the deficient order "full effect . . . in violation of [a] legal or constitutional right." *Stickney v. Wilt*, 90 U.S. 150, 162 (1874); *see United States v. Huckabee*, 83 U.S. 414, 435 (1872) (calling dismissal "the correct practice" where "a court has no jurisdiction"). Here, dismissal simply means Prater must seek review of the magistrate judge's non-final, non-binding order in the district court, where his claim will be finally adjudicated by an Article III official.

IV.

While we will dismiss Prater's appeal for lack of jurisdiction, we have the power to review Isaac's and Aaron's appeals under 28 U.S.C. § 636(c)(3). We will affirm the magistrate judges' summary judgment orders in both cases for failure to exhaust.

Under the PLRA, prisoners who seek to challenge their conditions of confinement must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). We determine "whether a prisoner has 'properly' exhausted a claim" by "evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances." *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). At issue here are two procedures. The first, ADM 804, sets out the default procedure for the inmate grievance process. The second, ADM 001, relates to reporting and investigating inmate abuse by staff. *Amicus* concedes Isaac and Aaron did not exhaust their remedies under ADM 804. Nevertheless, it argues Isaac and Aaron exhausted their claims because they reported to prison staff the details of their abuse allegations in accordance with ADM 001. For *Amicus* to be right, ADM 804 and ADM 001 must provide alternative paths for exhaustion. They do not.

ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility

32

Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals.

ADM 804 clearly states when it does not apply—for example, when an inmate alleges sexual abuse, or his claim concerns an "incident[] of an urgent or emergency nature" or misconduct charges. ADM 804 § 1(A)(2), (7). When one of those exceptions applies, a plaintiff is excused from satisfying ADM 804's exhaustion requirement. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 307 (3d Cir. 2020). But Isaac and Aaron do not argue that they satisfy an existing exception; rather, they ask that we read into the text of DOC policy a new exception—exhaustion under ADM 001. Just as we refrain from rewriting statutes, we will not amend DOC policy from the bench and add a new avenue for administrative exhaustion. *See id.* at 306 (applying principles of statutory interpretation to DOC policy).

While ADM 804 creates a formal procedure to resolve problems or other issues of concern arising during confinement, ADM 001 aims to ensure that staff do not subject an inmate to corporal or unusual punishment, or personal abuse or injury. ADM 001 speaks to all who may be privy to inmate abuse—inmates, employees, and all persons and entities who maintain contact with inmates. The policy permits an inmate who is the victim of abuse to report it verbally or in writing to a staff member, complain directly to DOC's Central Office, *or* file a formal grievance pursuant to ADM 804. The fact that ADM 001 does not require a formal grievance to trigger an investigation shows the policy mitigates and provides relief for

33

alleged abuse even when it does not violate legal rights. By contrast, ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires. ADM 001 contains no similar requirements, all of which would be necessary to afford an inmate meaningful relief in court.

The interrelatedness of the policies does not suggest the two are interchangeable. ADM 804's cross reference to ADM 001 reveals that the two policies work in tandem, not in place of one another. When an inmate brings an abuse grievance, the normal ADM 804 review does not proceed until an investigation occurs in accordance with ADM 001. The Grievance Officer does not provide an initial response to an abuse-related grievance until he receives and reviews the documentation from the ADM 001 investigation. But that does not change the fact that ADM 804 is the sole procedure for obtaining an adjudicatory decision subject to appeal. A different conclusion would nullify the grievance review process outlined by ADM 804. While ADM 001 produces investigative reports that may help the ADM 804 process along, among other purposes, it does not replace ADM 804.

We conclude that ADM 804 is the exclusive means of exhaustion. And, having failed to follow the full administrative review process under ADM 804, Isaac and Aaron necessarily failed to properly exhaust their claims under the PLRA.

## V.

Finally, we address *Amicus*'s argument that we should exercise our supervisory authority to review the Western District of Pennsylvania consent procedures and rectify their supposed deficiencies.

34

While "courts of appeals are authorized to 'mandate procedures deemed desirable from the viewpoint of sound judicial practice,'" *Wecht*, 484 F.3d at 204 (citation omitted), "our supervisory power should not be invoked lightly," *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 295 (3d Cir. 1991). The consent procedures for the Western District ensure voluntary consent by litigants, adhere to § 636(c) procedures, and leave room for district courts to experiment with magistrate judge involvement in cases. Local Rule 10 codifies the procedure for obtaining party consent soon after a pro se prisoner initiates a civil suit. *See* W.D. Pa. Local Civ. R. 10(E). And Local Rule 72 makes clear that absent consent, a magistrate judge has the power only to decide nondispositive motions and recommend a decision on dispositive motions. *See* W.D. Pa. Local Civ. R. 72(C)–(E).

*Amicus* attacks the Local Rules from several angles, but its arguments are not persuasive. First, even though all prisoner civil cases and non-death-penalty habeas cases are automatically assigned to a magistrate judge, the Local Rules specify that the magistrate judge's decision-making authority is constrained by the jurisdictional limits of § 636. *See* W.D. Pa. Local Civ. R. 72(G). Thus, in keeping with § 636(b)(1) and the Federal Rules, the Local Rules permissibly designate magistrate judges to exercise limited decision-making authority absent consent. Second, the Local Rules do not run afoul of § 636(c)'s requirement that a litigant be advised of the right to refuse magistrate judge jurisdiction and the lack of adverse consequences upon refusal. Section 636(c) requires this advisement only when courts are *reminding* litigants about the availability of magistrate judge jurisdiction, not first informing them. 28 U.S.C. § 636(c)(2); *see also* Fed. R. Civ. P. 73(b). Plus, the advisement is meant to mitigate coercive consent after a litigant has already declined magistrate judge

35

jurisdiction. *Amicus* does not identify coercion after first refusal here or generally in the Western District. Finally, unlike the ambiguous and jurisdiction-presuming consent forms in *Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 916 (9th Cir. 2003), cited by *Amicus* for support, the Western District's forms (i) require consent prior to final judgment, (ii) identify statutory authority, and (iii) provide an explicit option to select a district court judge. W.D. Pa. Local Civ. R. 10, 72.

In short, the Western District's Local Rules provide adequate safeguards. Jurisdictions may vary how they implement § 636 and Federal Rules 72 and 73, and we are satisfied that the Western District's procedures ensure knowing and voluntary consent to magistrate judge jurisdiction.

## VI.

For these reasons, we will dismiss Prater's appeal challenging the magistrate judge's involuntary dismissal of his case because we lack jurisdiction. And we will affirm the magistrate judges' summary judgment orders in Isaac's and Aaron's cases for failure to exhaust administrative remedies.